UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VISHAL LNU,

                    Petitioner,

          v.

PAMELA BONDI et al.,

                    Respondents.

CASE NO. 2:26-cv-00187-DGE

ORDER GRANTING
PETITIONER'S PETITION FOR
WRIT OF HABEAS CORPUS
(DKT. NO. 1)

Before the Court is Petitioner's petition for writ of habeas corpus.  (Dkt. No. 1.)  He

brings claims for violation of his due process rights under the Fifth Amendment of the United

States Constitution and violation of the Immigration and Nationality Act ("INA").  (*Id.* at 9–16.)

## I.   BACKGROUND

### A.  Factual Background

Petitioner Vishal Lnu is a native and citizen of India.  (Dkt. No. 2-1 at 2.)  He entered the

United States near Lukeville, Arizona, on January 24, 2024.  (*Id.*)  He was not "admitted or

paroled" after inspection by an immigration officer upon his entry.  (*Id.*)  Petitioner was

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

encountered by Customs and Border Patrol ("CBP") the same day he entered the country and was transferred to the Tucson Soft-Sided Facility in Tucson, Arizona for processing. (Dkt. No. 7-2 at 4.) On January 26, 2024, he was served a Notice to Appear ("NTA"). (*Id.*; Dkt. No. 2-1.) The NTA identified Petitioner was removable "pursuant to 212(A)(6)(a)(i) of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1182(A)(6)(a)(i). (Dkt. No. 2-1 at 2.) Petitioner's order of release on recognizance identifies Petitioner was released "[i]n accordance with section 236 of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations[.]"[1] (Dkt. No. 7-3 at 2.) In contrast, the Form I-213 indicated Petitioner's release was "for humanitarian reasons." (Dkt. No. 7-2 at 4.) Petitioner apparently told CPB his "intended destination was Fresno, California"; he was ordered to appear for a removal hearing in San Francisco on December 17, 2024. (Dkt. Nos. 2-1 at 2; 6 at 2.)

Upon arrival in California, Petitioner retained counsel and filed for asylum on June 19, 2024. (Dkt. No. 6 at 2.) On December 13, 2024, an immigration judge scheduled Petitioner for an individual hearing in San Francisco on April 15, 2027.[2] (Dkt. No. 2-2 at 2.) In the interim, Petitioner attended a scheduled check-in on January 16, 2025, after which he was instructed to check in again on January 19, 2026. (*See* Dkt. No. 7-3 at 3.)

Petitioner states that because his English proficiency was limited, he spoke with his immigration attorney in his asylum case to help "proceed with a planned relocation to Washington." (Dkt. No. 1 at 7.) Petitioner filed a motion to change the venue of his removal

---

[1] Section 236 of the INA is codified at 8 U.S.C. § 1226.

[2] Petitioner contends in his habeas petition that the immigration judge also "waiv[ed] the December 17, 2024 hearing" when the judge "advance[ed] his second and main hearing to April 15, 2027." (Dkt. No. 1 at 7.) It is unclear what Petitioner means by this assertion; regardless, such assertion is immaterial to the issue of whether Petitioner's arrest and detention after relocating to Washington is constitutional.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

proceedings from the San Francisco Immigration Court to the Seattle Immigration Court on December 10, 2025.  (Dkt. No. 6 at 3.)  That motion was granted on December 22, 2025.  (*Id.*; Dkt. No. 2-4.)

While Petitioner's motion for change of venue was pending, he relocated to Washington. (Dkt. No. 1 at 8.)  He then voluntarily reported to the Seattle, Washington Enforcement and Removal Operations ("ERO") office for a check-in on December 19, 2025.[3]  (Dkt. No. 6 at 3.) During his check-in, ERO determined Petitioner was "supposed to be reporting" in Fresno, California, and concluded Petitioner "did not have permission to travel or move to Washington." (*Id.*)  As a result, ERO arrested Petitioner, determining he had violated the conditions of his order of recognizance "by being in Washington without approval."  (*Id.*)  ERO revoked Petitioner's order of recognizance and served him with a notice of arrest and a notice of custody determination.  (Dkt. Nos. 6 at 3; 7-4 at 2; 7-5 at 2.)  Both the warrant and custody notice identify INA § 236 as the authority for his re-detention.  (*Id.*)  Petitioner was transferred to the Northwest Immigration & Customs Enforcement ("ICE") Processing Center ("NWIPC"), which Respondents assert was done pursuant to "INA § 235."[4]  (Dkt. No. 6 at 3.)

Petitioner asserts that as of the date of the filing of his petition, "no hearing has been scheduled in either the Seattle or Tacoma Immigration Courts."  (Dkt. No. 1 at 8) (citing Dkt. No. 2-5 at 2–3).  He further asserts his April 2027 hearing has been canceled and no new date has been set.  (Dkt. Nos. 2 at 2; 2-5 at 2–3.)  Deportation Officer Brandon Curran declares that

---

[3] In his petition, Petitioner asserts he checked in with the ERO office in Tukwila, Washington, rather than Seattle.  (Dkt. No. 1 at 8.)  The Court takes judicial notice of the fact Tukwila is located between Tacoma and Seattle.  *See* Fed. R. Evid. 201.

[4] Section 235 of the INA is codified at 8 U.S.C. § 1225.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 3

Petitioner has an "upcoming master [calendar] hearing" on February 18, 2026."  (Dkt. No. 6 at 3.)

**B.  Procedural History**

Petitioner filed a petition for writ of habeas corpus on January 16, 2026.  (Dkt. No. 1.) Petitioner asserts his detention violates the Due Process Clause of the Fifth Amendment and violates the INA because Respondents misapply 8 U.S.C. §§ 1226(a) and 1225(b).  (*Id*. at 9–15.) Pursuant to the Court's standard scheduling order, Respondents filed a response on February 5, 2026 (Dkt. No. 5) and Petitioner filed his traverse on February 7 (Dkt. No. 8).

Petitioner argues his due process rights were violated when his "conditional liberty" was revoked based on an "alleged noncompliance allegation" and that he was not provided constitutionally adequate process prior to his arrest.  (Dkt. No. 1 at 12.)  He asserts Respondents' allegation that he failed to notify ICE of his planned relocation does not establish the requirements for mandatory detention under § 236(a) and that he is not a flight risk because he was appearing before ICE voluntarily when he was arrested.  (*Id.*)  Petitioner also argues it would be futile to require him to seek a bond hearing because of Respondents' chosen detention authority under § 1225(b).  (*Id.* at 15.)

The federal Respondents argue a pre-deprivation hearing was not required prior to his arrest because his "repeated violations" of the conditions of his release in the order of recognizance cut against his liberty interest.  (Dkt. No. 5 at 7.)  Respondents concur that a pre-deprivation hearing would be futile because they assert he is subject to lawful, mandatory detention under § 1225(b).  (*Id.* at 8–9.)

Petitioner filed a traverse reasserting that his various immigration documents have identified the authority for his detention as § 1226, rather than § 1225, and that his re-detention

without a hearing violated the protections afforded to him by the Fifth Amendment.  (Dkt. No. 8 at 2–8.)

**II.    ANALYSIS**

#### A.  Legal Standard

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

#### B.  Petitioner is not detained under 8 U.S.C. § 1225.

At the outset, Respondents argue Petitioner is subject to mandatory detention under expedited removal proceedings pursuant to 8 U.S.C. § 1225(b), and its implementing regulations, 8 C.F.R. § 235 *et seq*.  (Dkt. No. 5 at 4–6.)  § 1225 applies to "applicants for admission" to the United States, who are defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . ."  8 U.S.C. § 1225(a)(1).  Applicants for

admission fall into two categories, both of which are subject to mandatory detention.[5] *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Individuals detained under § 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit." *Id.* at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)). In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention. *Jennings*, 583 U.S. at 303. § 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings. *Id.*

Here, the Court finds Respondents' argument that Petitioner is detained pursuant to § 1225 inconsistent with the factual record. First, when Petitioner was first apprehended by CPB in Arizona in January 2024, he was subsequently released on an order of recognizance "[i]n accordance with section 236 of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations." (Dkt. No. 7-3 at 2.) An order of recognizance is issued when a detainee is released pursuant to § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). The Parties do not dispute that Petitioner attended at least one check-in meeting on January 16, 2025, pursuant to the terms of his order of recognizance. (*See* Dkt. No. 7-3 at 3.)

Second, Petitioner's NTA likewise does not designate Petitioner as an "arriving alien" (*see* Dkt. No. 7-1 at 2), which is the active language used to define the scope of § 1225(b)(2)(a)

---

[5] § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 6

in its implementing regulation.  *See* 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with [§ 1225(b)].") (emphasis added); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (concluding "arriving alien" language synonymous with § 1225).

Third, when Petitioner was taken into ICE custody when he arrived at the Seattle ERO, his warrant for arrest and his notice of custody determination both listed § 236 as the basis for ICE's actions.  (*See* Dkt. Nos. 7-4 at 2 (a determination of probable cause that Petitioner is removable made by "[a]ny immigration officer authorized *pursuant to sections 236* and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations"); 7-5 at 2 (a determination that Petitioner will be detained by the Department of Homeland Security "*[p]ursuant to the authority contained in section 236* of the [INA] and part 236 of title 8, Code of Federal Regulations") (emphasis added).)  Further, his order of release was canceled the same day.  (*See* Dkt. No. 7-3 at 2.)  It would make little sense for Respondents to revoke Petitioner's release on order of recognizance issued pursuant to § 1226 if he was not in fact subject to § 1226's procedural framework.

The Court notes that Petitioner's Form I-213 does identify he was to be released on recognizance in January 2024 "for humanitarian reasons," which is reminiscent of the language found in § 1225.  *See Jennings*, 583 U.S. at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)) (individuals detained under § 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit").  But aside from hinting at the possibility of applying § 1225, along with Officer Curran's declaration stating Petitioner was "transferred to the NWIPC for detention under INA § 235" (Dkt. No. 6 at 3), Petitioner's immigration documents

unanimously state he is subject to removal proceedings under § 1226.[6]  (*See* Dkt. Nos. 7-3 at 2 (order of release of recognizance under § 236 of the INA and subsequent cancellation of order); 7-4 at 2 (administrative warrant issued by an immigration officer authorized pursuant to § 236 of the INA); 7-5 at 2 (notice of custody determination pursuant to § 236).)  Sections 1225 and 1226 cannot be applied simultaneously, and the "procedural protections thereunder . . . cannot be unilaterally abrogated without process by the Government simply 'switching tracks.'"  *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637505, at *8 (N.D. Cal. Sept. 12, 2025) (citation omitted).

Accordingly, the Court finds Petitioner is not subject to, nor currently being detained pursuant to, 8 U.S.C. § 1225.

**C.  Petitioner's re-detention violated due process.**

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings.  U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.").

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir.

---

[6] Moreover, parole for humanitarian reasons is terminated only after the Secretary of Homeland Security has determined the purposes of such parole have been served.  *See* 8 U.S.C. § 1182(d)(5)(A).  Nothing in the record identifies such a determination was made at the time Petitioner was detained, which further weighs against finding § 1225 was the basis for his release and subsequent re-detention.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 8

2022).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

### 1.  Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.*  Federal courts have continually recognized an immigration detainee's private interest in freedom from imprisonment.  *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).  An individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention.  *See Makuey v. Scott*, No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding Petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).

Here, Petitioner was arrested and taken into custody for processing in January 2024 but then placed in removal proceedings and released on his own recognizance.  (*See* Dkt. Nos. 7-2 at 4; 7-3 at 2.)  At that point, he "took with him a liberty interest which is entitled to the full

protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025); *Makuey*, 2025 WL 3640900, at *4. Petitioner was then free in the community for nearly two years before he was re-detained. "[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe*, 787 F. Supp. 3d at 1093. The first *Mathews* factor thus favors Petitioner.

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. This factor weighs most heavily in Petitioner's favor.

First, as discussed, Respondents' position that Petitioner is subject to § 1225 is without support in the record. *See* Section II(B) *supra*. This position alone shows an erroneous basis for Petitioner's detention. Further, courts in this district have routinely had that the Government violates an individual's due process rights when the individual is placed in removal proceedings and released on their own recognizance but is then re-detained without a pre-deprivation hearing. *See Singh v. Noem*, Case No. 2:26-cv-00079-DGE, 206 WL 265670 (W.D. Wash. Feb. 2, 2026); *Bello Chacon v. Hermosillo*, Case No. 2:25-cv-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025).

Second, Respondents' position that Petitioner could be re-detained after showing up voluntarily at the Washington ERO office is unavailing. Respondents argue Petitioner was arrested on December 19 because he violated the conditions of his order of recognizance "by

being in Washington without approval." (Dkt. No. 5 at 3) (citing Dkt. No. 6 at 3). Petitioner asserts he was relying on his attorney's advice and his understanding that his supervision had been transferred when he visited the ERO office on December 19. (Dkt. No. 1 at 8.) Considering the available evidence and taking Petitioner at his word, it does not seem Petitioner was provided with any notice of concerns about his plans to relocate prior to his arrest in December. And knowing that his relocation was approved just three days later underscores the fact there was nothing inherently concerning about his relocation.[7] Regardless of Petitioner's understanding of the status of his request to relocate, the record shows Petitioner was not given an "opportunity to be heard 'at a meaningful time and in a meaningful manner'" before he was arrested. *Mathews*, 424 U.S. at 333 (citation omitted). Petitioner appeared at the ERO office of his own volition and was arrested, provided notice of his detention, and had his order of recognizance revoked all on the same day. (Dkt. Nos. 6 at 3; 7-4 at 2; 7-5 at 2.) This timeline prevented Petitioner from receiving a pre-deprivation hearing in front of a "neutral decisionmaker." *See Kaur v. U.S. Dep't of Homeland Sec.*, Case No. 1:25-cv-01726-TLN-SCR, 2025 WL 3706724, at *6 (E.D. Cal. Dec. 22, 2025) ("At minimum, due process [ ] requires that Petitioner receive a hearing before a neutral decisionmaker.").

Respondents rely on *Martinez Hernandez v. Andrews*, Case No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), to support their position that Petitioner's re-detention qualifies as a "special case" that does not justify a pre-deprivation hearing. (Dkt. No. 5

---

[7] The Court acknowledges Respondents' argument that there is no way Petitioner could have known his motion to change venue would be granted in the near future, nor that ERO would have known Petitioner had moved without Petitioner providing that information. (*See* Dkt. No. 5 at 3 n.3.) But the question of whether his premature relocation constitutes a sufficiently changed circumstance such that detention is warranted is a matter that should have been addressed at a *pre*-deprivation hearing. *See Monteiro de Souza v. Robbins*, Case No. 1:25-cv-01597-DJC-JDP, 2025 WL 3523058, at *1 (E.D. Cal. Dec. 9, 2025).

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 11

at 7.)  But in *Martinez Hernandez*, the petitioner's purported violations that were "not obviously pretextual" included an arrest in California, mechanical issues with his ankle monitor, and "master zone leave alerts" when he traveled outside a certain geographic area; he also had a criminal record in his home country of El Salvador.[8]  *Id.* at *2–3, 11–12. After assessing the numerous infractions, the court found there was a factual dispute about whether the petitioner "repeatedly violated the terms of his parole."  *Id.* at *12.  The court concluded that providing the petitioner with notice and a pre-deprivation hearing "would have been impracticable and/or would have motivated his flight," so therefore, a post-deprivation hearing was sufficient.  *Id.* at *12.  By contrast here, Petitioner was not arrested, has no documented criminal record, and voluntarily appeared at the ERO office a month prior to his scheduled check-in.  (Dkt. No. 6 at 3.)  This sort of "technical violation" is distinct from the infractions analyzed in *Martinez Hernandez*.  *See Fernando A.G. v. Chestnut*, Case No. 1:25-cv-01925-SKO (HC), 2026 WL 74007, at *6 n.6 (E.D. Cal. Jan. 9, 2026) (dismissing the Government's argument that various violations of the petitioner's conditions of release justified his detention because the two most recent violations were for missed check-ins and the petitioner was "arrested in the context of *complying* with an order to check in").

At least one other court in this district has considered a situation in which a petitioner relocates and appears unscheduled at a new ERO office.  *See Kumar v. Wamsley et al.*, Case No. 2:25-cv-01772-JHC-BAT, 2026 WL 251798, at *2 (W.D. Wash. Jan. 30, 2026) (explaining how the petitioner appeared at the Yakima, Washington ERO office four days after he appeared at the

---

[8] The petitioner in *Martinez Hernandez* was also released on recognizance pursuant to INA § 236 "contingent upon his participation in the Alternatives to Detention (ATD) program and on his compliance with certain conditions of release."  2025 WL 2495767, at *2.  Petitioner here was not subject to any kind of special conditions (beyond standard reporting obligations) when he was released under § 236 in January 2024.

San Jose ERO office; upon review of relevant databases, government officials noticed the petitioner had filed a request to change venue and had failed to timely provide ICE with new addresses in the past). Even assuming arguendo that the respondents' position was true (i.e., that the petitioner had a pattern of failing to report new addresses), the *Kumar* court concluded that the respondents still "fail[ed] to demonstrate that Petitioner received the essential requirements of due process before being re-detained[.]" *Id.* at *5. Similarly here, even if Respondents are correct that Petitioner had relocated to Washington without ICE's approval, that fact alone does not absolve the Government of its constitutional obligations to provide him with a pre-deprivation hearing.

Finally, the risk of erroneous deprivation because of Petitioner's re-detention is high. The record indicates that prior to December 2025, Petitioner complied with the conditions of his release and maintained status in the community without incident. Despite being in removal proceedings since January 2024 (*see* Dkt. No. 7-2), Petitioner was not re-detained until he checked in at the ERO office after moving to Washington in December 2025. At any point before then, an immigration judge could have concluded he was a flight risk and ordered his detention, but they did not. "[I]f ICE has apprehended a noncitizen and placed [him] in removal proceedings without detaining [him], it has necessarily already determined that the noncitizen is neither a flight risk nor a threat to the public." *Pablo Sequen v. Albarran*, Case No. 25-cv-06487-PCP, 2025 WL 3724878, at *13 (N.D. Cal. Dec. 24, 2025) (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)). Other courts have rejected the argument that ICE can re-detain those released for "purely technical violations, like being late to a check-in," without regard as to whether that technical violation means the person is a flight risk or danger. *Vilela v. Robbins*,

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 13

Case No. 1:25-cv-01393-KES-HBK (HC), 2025 WL 3101334, at *4 (E.D. Cal. Nov. 6, 2025) (citation and alterations omitted) (collecting cases).  Furthermore, the fact that Petitioner's motion to change venue was granted just days later (*see* Dkt. No. 2-4) strengthens the assumption that he was not considered by the Government to be a flight risk nor a danger to the community.

### 3.  Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community.  *Zadvydas*, 533 U.S. at 690.  They also have a strong interest in enforcing immigration laws, but their interest in re-detaining Petitioner without a hearing is low.  *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).  Although "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents here offer no basis for the Court to conclude Petitioner's circumstances presented such an urgent scenario.  Instead, they make only the conclusory argument that Petitioner's relocation to Washington without ICE's consent "qualifies as a special case."  (Dkt. No. 5 at 7.)  But there is no evidence in the record that illustrates such circumstances, and "detention for its own sake is not a legitimate governmental interest."  *Salcedo Aceros*, 2025 WL 2637503, at *12.  In sum, though requiring pre-detention process in this case would present some administrative burden to

Respondents, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process is constitutionally deficient.

On balance, the *Mathews* factors show that before Respondents could lawfully re-detain Petitioner, he was entitled to notice and an opportunity to be heard. *See U.-G. v. Woffard*, Case No. 1:25-cv-01564-JLT-SKO (HC), 2026 WL 279887, at *5 (E.D. Cal. Feb. 3, 2026) (citations and alterations omitted) (explaining that the "root requirement" of the Due Process Clause is an opportunity for a hearing before an individual is deprived of "any significant protected interest"). Petitioner has proven by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

### III.    ORDER

Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within ONE day of this order and return him to the conditions of release identified in his January 26, 2024, order of release on recognizance (*see* Dkt. No. 7-3).

Petitioner SHALL not be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge. Neither the record nor the arguments presented by Respondents in this matter established urgent circumstances or a clear legal basis justifying re-detention without a pre-deprivation hearing.

Within **TWENTY-FOUR (24)** hours of this order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 15

Lastly, Petitioner seeks an award of attorney fees.  (*See* Dkt. No. 1 at 17.)  Petitioner is GRANTED leave to file a motion for attorney fees.  The motion for fees shall identify the legal authority supporting an award of fees and shall be filed no later than **March 16, 2026**.  If no motion is filed by that date, this matter will be closed.

The Clerk is directed to calendar this event.

Dated this 12th day of February 2026.

David G. Estudillo
United States District Judge