UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VISHAL LNU, | CASE NO. 2:26-cv-00187-DGE |
| Petitioner, | ORDER ON PETITIONER'S |
| v. | MOTION FOR ATTORNEY FEES |
| PAMELA BONDI et al., | |
| Respondents. | |

Before the Court is Petitioner's motion for attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  (Dkt. No. 11.)  Respondents oppose Petitioner's motion because they assert their position was substantially justified.  (Dkt. No. 15 at 1.)  In the alternative, they request the amount awarded be "significantly reduced" because of various billing deficiencies in Petitioner's counsel's timesheet.  (*Id.*)  For the reasons that follow, Petitioner's motion is GRANTED in part and DENIED in part.

ORDER ON PETITIONER'S MOTION FOR ATTORNEY FEES - 1

## I   DISCUSSION

The Court assumes familiarity with the underlying facts of this case.  Under the EAJA, the Court must award attorney fees to the prevailing party in an action such as this unless it finds the government's position was "substantially justified" or that "special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  The EAJA creates a presumption that fees will be awarded to a prevailing party.  *Flores v. Shalala*, 49 F.3d 562, 567 (9th Cir. 1995); *Zapon v. U.S. Dep't of Just.*, 53 F.3d 283, 284 (9th Cir. 1995).  The Supreme Court has interpreted the term "substantially justified" to mean that a prevailing party is not entitled to recover fees if the government's position is "justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  Attorney fees under EAJA must be reasonable.  28 U.S.C. § 2412(d)(2)(A); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Because this Court granted Petitioner's petition for writ of habeas corpus and ordered his release from custody, Petitioner is a prevailing party.  (Dkt. No. 9 at 15); *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005) (citations omitted) (holding a litigant is a prevailing party if they both (1) achieve a material alteration in the legal relationship of the parties; and (2) the alteration is judicially sanctioned); *Buckhannon Bd. & Care Home Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (holding a prevailing party is one who was awarded at least some relief by the court).

**A. Respondents' position was not substantially justified.**

"It is the government's burden to show that its position was substantially justified." *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013).  "The government must justify both the 'underlying government action at issue and the government's position defending that action in court.'" *S.F. v. Bostock*, Case No. 3:25-cv-01084-MTK, 2026 WL 1230044, at *3 (D. Or. May

ORDER ON PETITIONER'S MOTION FOR ATTORNEY FEES - 2

5, 2026) (quoting *Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1084 (9th Cir. 2002) (internal citation and quotation marks omitted)).  The government's position must have a "reasonable basis both in law and fact."  *Meier*, 727 F.3d at 870 (citation omitted).  The reasonableness standard is met if the government's position is "'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'"  *Id.* (quoting *Pierce*, 487 U.S. at 565).  "The government's position must be substantially justified at each stage of the proceedings."  *Corbin v. Apfel*, 149 F.3d 1051, 1052 (9th Cir. 1998) (citation and quotation marks omitted).  However, the government's failure to prevail on the underlying issues is not dispositive of whether its position was substantially justified.  *Pierce*, 487 U.S. at 569.

Respondents argue they were substantially justified on two arguments: First, that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b), and second, that Petitioner's re-detention did not require a pre-deprivation hearing to comply with Due Process under the framework of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  (Dkt. No. 15 at 2–3.)

As to Respondents' first argument, the Court concludes their position was not substantially justified.  Though Respondents are correct that the Court acknowledged some ambiguity in the record (*id.* at 2) because Petitioner's I-213 identified he was released on recognizance for humanitarian reasons, which echoes the language found in § 1225, it also concluded "Petitioner's immigration documents unanimously state he is subject to removal proceedings under § 1226."  (Dkt. No. 9 at 7–8.)  This included the following evidence: (1) Petitioner was released on an order of recognizance in accordance with INA § 236 when he was first detained; (2) Petitioner was re-detained in Seattle and his release was revoked also pursuant to INA § 236; and (3) even assuming Petitioner was released for humanitarian parole under § 1225, there was no evidence the Department of Homeland Security had determined the

purposes of such parole had been accomplished. (*Id.* at 5–8); 8 U.S.C. §§ 1182(d)(5)(A); 1226(a). Further, the majority of courts in this district have found that in cases where a noncitizen is released into the country on their own recognizance, they are governed by § 1226. *E.g.*, *Castillo v. ICE Field Off. Dir.*, Case No. C26-0842-KKE, 2026 WL 1172910, at *2 (W.D. Wash. Apr. 30, 2026) (quoting *Aquino v. LaRose*, Case No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases)) ("'The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen . . . who has resided in the United States for many years."); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) (holding that § 1226(a), not § 1225(b)(2), governs inadmissible noncitizens residing in the country). Despite the record evidence to the contrary, Respondents took the litigation position that Petitioner was subject to mandatory detention under § 1225. (Dkt. No. 5 at 4–6.) This position was not based on a "reasonable interpretation of the record and governing law[]" (Dkt. No. 15 at 2), and accordingly, Respondents have not met their burden to show their argument that Petitioner was subject to mandatory detention under § 1225 was substantially justified. *Meier*, 727 F.3d at 970.

Respondents next argue they reasonably applied the *Mathews* balancing framework for Petitioner's Due Process claim. (Dkt. No. 15 at 3.) In their response to Petitioner's petition, Respondents acknowledged Petitioner's conditional liberty interest but asserted his "repeated violations" of the conditions of his release substantially reduced the weight of his interest. (Dkt. No. 5 at 7.) Relying on distinguishable case law, Respondents argued Petitioner's re-detention qualified as a special case that warranted re-detention without a pre-deprivation hearing, despite acknowledging other district courts have found the revocation of parole or an order of release on

recognizance requires a pre-deprivation hearing. (*Id.* at 8–9.)  Further, they argued "a pre-deprivation hearing would be futile as his detention is based on his mandatory detention." (*Id.* at 8.)

Respondents' argument that they reasonably weighed the government's interests against Petitioner's is unpersuasive, and the Court's findings underscore that Respondents' actions were unreasonable.  As discussed, Respondents' argument that Petitioner was detained subject to § 1225 is not substantially justified, and in its original order, the Court noted this position on its own "shows an erroneous basis for Petitioner's detention." (Dkt. No. 9 at 10.)  Further, the Court dispensed of Respondents' claim that Petitioner's re-detention qualifies as a special case that permitted re-detention without pre-deprivation process.  The only case Respondents cited in support of their "special case" argument is *Martinez Hernandez v. Andrews*, Case No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), which involved a petitioner with a criminal history in his home country who was released under an Alternatives to Detention "("ATD") program with special conditions of release; the petitioner also had been arrested in California, experienced issues with his ankle monitor, and had traveled outside a predetermined geographic area. *Id.* at *2–3, 11–12.  The court in *Martinez Hernandez* concluded there were factual issues regarding whether the petitioner violated the terms of his parole and that a pre-deprivation hearing would have been impracticable or would have motivated his flight. *Id.* at *12.  But as the Court pointed out in its order granting habeas relief, Petitioner's situation was distinctly different: he was not arrested, has no documented criminal record, had complied with his immigration check-ins, and voluntarily appeared at the Enforcement and Removal Operations ("ERO") office in Seattle a month early.  (Dkt. No. 9 at 12.)  The Court concluded Respondents' argument that Petitioner had relocated to Washington without ERO's approval, even taken as

true, did not eliminate the requirement for a pre-deprivation hearing before re-detaining Petitioner.  (*Id.* at 13); *see also Kumar v. Wamsley et al.*, Case No. 2:25-cv-01772-JHC-BAT, 2026 WL 251798, at *2, 5 (W.D. Wash. Jan. 30, 2026).

"Unreasonable conduct that is 'confined to a narrow but important issue,' as here, can 'taint the government's "position" in the entire case as unreasonable[.]'" *Tao v. U.S. Citizenship and Immigr. Servs. et al.*, Case No. 2:19-cv-02675-JAK (AJRx), 2026 WL 638878, at *6 (C.D. Cal. Feb. 17, 2026) (quoting *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993)).  Although the factual circumstances underlying Petitioner's re-detention were unique (i.e., Petitioner believing ERO had approved his relocation to Washington and showing up at a check-in meeting *early*), the overarching legal issues were not.  As Respondents acknowledged, many courts have concluded the revocation of a noncitizen's parole or order of release on recognizance requires a pre-deprivation hearing.  *E.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323 (W.D. Wash. 2025) ("[E]ven if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his ATD violations, it would not necessarily follow that Petitioner can be detained for those violations without a hearing."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (holding same).  Respondents' reliance on *Martinez Hernandez* was similarly unreasonable.  In short, Respondents' litigation position does not establish that ERO's actions, or Respondents' litigation position in response to Petitioner's habeas petition, were reasonable.  *Corbin*, 149 F.3d at 1052 (citation and quotation marks omitted).  Looking at this case as a whole, Respondents have not met their burden to show their litigation position was substantially justified.  *See Al-Harbi*, 284 F.3d at 1084–1085 (citation and quotation marks omitted) ("[W]hen [courts] decide whether the government's litigation

position is substantially justified, the EAJA . . . favors treating a case as an inclusive whole, rather than as atomized line items.").

**B. Petitioner is entitled to $8,965.50 in attorney fees.**

Petitioner is entitled to "reasonable" fees. 28 U.S.C. § 2412(d)(2)(A). Hourly rates are reasonable where they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The fee applicant bears the burden of proving reasonableness. 28 U.S.C. § 2412(d)(2)(A); *Hensley*, 461 U.S.at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.").

Petitioner applies for an award of $11,836.48 in attorney fees and an additional $5.00 for the habeas petition filing fee. (*See* Dkt. No. 11-1 at 6.) This accounts for compensation for the time Petitioner's attorney, Ms. Diyora Ismailova, spent on this matter, totaling 47 hours of attorney work.[1] (*Id.*) Ms. Ismailova applied an hourly rate of $251.84.[2] (Dkt. No. 11-3 at 2.)

---

[1] Attached to Petitioner's motion is the declaration of Olia Catala, which states she "worked together with attorney Diyora Ismailova" in this matter. (Dkt. No. 11-3 at 2.) It appears Ms. Catala prepared the declaration, but the motion itself is signed by both Ms. Catala and Ms. Ismailova (*see* Dkt. No. 11 at 8) and Petitioner's declaration states he assigns any EAJA fees awarded to Ms. Ismailova. (Dkt. No. 11-2 at 2.) For ease of reference the Court will refer only to Ms. Ismailova in this order, unless noted otherwise.

[2] As Ms. Catala notes in her declaration, the maximum hourly EAJA rate in 2024 was $251.84. (Dkt. No. 11-3 at 2); *Statutory Maximum Rates Under the Equal Access to Justice Act*, https://www.ce9.uscourts.gov/criminal-justice-act/statutory-maximum-rates/ (last visited June 15, 2026). Ms. Catala does not explain why she is applying the 2024 rate to this litigation, rather than the 2025 rate, and Respondents likewise do not address it. The Court finds a rate of $251.84 is reasonable under the applicable legal standards. 28 U.S.C. § 2412(d)(2)(A); *Blum*, 465 U.S. at 895 n.11; *Camacho*, 523 F.3d at 979.

ORDER ON PETITIONER'S MOTION FOR ATTORNEY FEES - 7

The party seeking fees must submit "an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed."  28 U.S.C. § 2412(d)(1)(B).  The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved[.]"  *Hensley,* 461 U.S. at 431 (citation omitted).  However, "excessive, redundant, or otherwise unnecessary" hours should be excluded from the fee award.  *Id.* at 434.  Where billing records are lacking in detail, a court may reduce the fee to a reasonable amount.  *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 948–949 (9th Cir. 2007).

Respondents argue the amount requested by Petitioner is excessive for two reasons.  First, because Petitioner is seeking compensation for 47 hours of work on a single-petitioner habeas case, which Respondents argue is "disproportionate to the nature and scope of the litigation."  (Dkt. No. 15 at 4.)  This includes "excessive" entries, including one hour to file the habeas petition, 0.5 hours to file the reply, and another 0.5 hours to review a notice of appearance.  (*Id.*)  Second, Respondents argue the billing records indicate the use of half-hour time increments, which overstates the time Ms. Ismailova reasonably expended on the litigation.  (*Id.*)  In his reply, Petitioner argues the 47 hours are reasonable, and further, that counsel exercised "billing judgment" and did not use large increments to artificially inflate time entries.  (Dkt. No. 16 at 3–7.)

The Court agrees with Respondents in part.  First, it appears Ms. Ismailova included various clerical tasks on her itemized statement.  Though Petitioner asserts tasks such as filing documents and reviewing a notice of appearance "require[] substantive attorney involvement at multiple stages[,]" (Dkt. No. 16 at 4–5), courts consistently find that "purely clerical work or secretarial tasks should not be billed at a paralegal or lawyer's rate, regardless of who performs them."  *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).  Such tasks should instead be

"subsumed in firm overhead[.]" *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Filing documents is considered a clerical task. *E.g.*, *Garcia v. Colvin*, Case No. 1:11–cv–01965–SKO, 2013 WL 5347494, at *7–8 (E.D. Cal. Sept. 23, 2013); *Ivins v. Comm'r of Soc. Sec. Admin.*, Case No. CV 22-00887 PHX CDB, 2023 WL 12175568, at *4–5 (D. Ariz. Apr. 17, 2023); *United States v. One 2008 Toyota Rav 4 Sports Utility Vehicle*, Case No. 2:09–cv–05672–SVW–PJW, 2012 WL 5272281, at *11–12 (C.D. Cal. Oct. 18, 2012). The Court accepts Petitioner's assertion that upon learning Bruce Scott, the Warden of the Northwest ICE Processing Center, was not represented by the U.S. Attorney's office, counsel was required to determine the appropriate method of service for him, leading to 0.5 hours of work to effectuate service by mail. (*See* Dkt. No. 16 at 4–5.) But preparing certificates of service and serving defendants by mail are also considered clerical in nature. *E.g.*, *Brandt v. Astrue*, Case No. 08-0658-TC, 2009 WL 1727472, at *2–4 (D. Or. June 16, 2009); *Dusty S. v. Kijakazi*, Case No. 4:20-CV-05165-MKD, 2021 WL 9763052, at *2 (E.D. Wash. Sept. 23, 2021).

The Court finds the following tasks are either clerical in nature or the billing description is insufficient to determine whether they are clerical tasks or otherwise reasonable:

| Date | Time Spent | Description |
|---|---|---|
| January 14, 2026 | 1.0 hours | File petition for writ of habeas corpus |
| January 18, 2026 | 0.5 hours | Review notice of appearance filed by government counsel and monitor docket activity |
| February 6, 2026 | 0.5 hours | File reply with court and confirm docket entry |
| February 10, 2026 | 0.5 hours | Review docket and monitor case status |

ORDER ON PETITIONER'S MOTION FOR ATTORNEY FEES - 9

(Dkt. No. 11-1.)  These time entries will be deducted from the overall fee award.

Second, the Court finds Ms. Ismailova's use of half-hour time increments is unreasonable.  "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley*, 461 U.S. at 437).  A fee applicant should maintain billing records in a manner that enables a reviewing court to easily identify the hours reasonably expended.  *Hensley*, 461 U.S. at 437.  Fee applicants who fail to meet this burden do so at their own peril.  Where billing records are lacking in detail, or where time entries are entered in large time increments, a court may reduce the fee to a reasonable amount.  *Welch*, 480 F.3d at 949 (district court reasonably concluded that a law firm's "practice of billing by the quarter-hour resulted in a request for excessive hours"); *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing).  Courts in this circuit have generally applied a percent reduction for billing in quarter-hour increments.  *See Welch*, 480 F.3d at 948 (reducing award by 20 percent for quarter-hour billing); *Zavorin v. Wamsley*, Case No. 2:26-cv-00173-DGE, 2026 WL 879246, at *2 (W.D. Wash. Mar. 31, 2026) (reducing award by 20 percent for 0.5-hour billing increments); *Harris v. Trash Man, LLC*, Civil No. 12-00169 HG-KSC, 2013 WL 1932715, at *4 (D. Haw. Apr. 16, 2013*)* (reducing award by 10 percent for quarter-hour billing), *report and recommendation adopted,* Civil No. 12-00169 HG-KSC, 2013 WL 1932710 (D. Haw. May 7, 2013); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100–1101 (D. Haw. 2010) (applying a 20 percent reduction for billing in quarter-hour increments); *Nolan v. City of L.A.*, Case No. CV 03-2190 GAF (AJWx), 2014 WL 12564127, at *7 (C.D. Cal. Feb. 10, 2014) (imposing a 30 percent reduction for entries that were vague or block-billed).

A review of Ms. Ismailova's claimed hours shows that she used 0.5-hour billing increments instead of the more accurate 0.1-hour increment, which suggests that the hours billed are excessive.  The entirety of Ms. Ismailova's time sheet comprises entries billed in half-hour and full hour increments, with many entries spanning multiple hours, and with several descriptions lacking sufficient specificity.  (*See* Dkt. No. 11-1.)  For example, Ms. Ismailova apparently spent 2.5 hours "[p]repar[ing] supporting exhibits," and then another 2.0 hours "[f]inaliz[ing] exhibits and verify[ing] factual record."  (*Id.* at 2.)  Though Ms. Ismailova argues she exercised billing judgment and that the EAJA does not inquire into the "mechanical increment used" (Dkt. No. 16 at 6), the Court believes such imprecise time entries make it difficult to ascertain what the timekeeper was actually doing.  *See Caggiano v. Comm'r of Soc. Sec. Admin.*, Case No. CV-19-05522-PHX-MTL, 2021 WL 2779499, at *4 (D. Ariz. July 2, 2021) ("[W]hen reviewing the Itemization of Services, the Court must determine whether the entries provide sufficient information to determine whether the time expended is reasonable."); *Mendez v. Cnty. of San Bernadino*, 540 F.3d 1109, 1129 (9th Cir. 2008), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (citation omitted) (where counsel bills their time in such a way that frustrates the court's efforts to determine whether the fees were reasonable, "such billing practices are legitimate grounds for reducing or eliminating certain claimed hours").

The Court finds that the requested number of hours should be reduced by 20 percent, from 44.5 hours to 35.6 hours to account for both the use of the large time increments and the vague time entries.[3]  Applying the hourly rate of $251.84 requested by Petitioner, Petitioner is

---

[3] Respondents argue 47 hours of attorney work on a single-petitioner case is excessive and facially unreasonable.  (Dkt. No. 15 at 4.)  However, aside from requesting a 50 percent

entitled to $8,965.50 in attorney fees plus $5.00 for the habeas petition filing fee, for a total of **$8,970.50**.

**II     ORDER**

Petitioner's motion for fees brought under the EAJA (Dkt. No. 11) is GRANTED in part and DENIED in part.  It is ORDERED that fees in the amount of $8,970.50 SHALL be awarded to Petitioner pursuant to the EAJA.

Petitioner assigned his EAJA fee award to his attorney in the fee agreement.  (Dkt. No. 11-2.)  Accordingly, attorney fees in the amount of $8,970.50 will be paid to Petitioner's attorney, subject to verification that Petitioner does not have a debt which qualifies for offset against the awarded fees, pursuant to the Treasury Offset Program as discussed in *Astrue v. Ratliff*, 560 U.S. 586 (2010).  If Petitioner has no such debt, then the check shall be made out to Petitioner's attorney: Diyora Ismailova at Diyora Law Office PLLC, 330 SW 43rd St., K432, Renton, WA 98057.  If Petitioner has a debt, then the check for any remaining funds after offset of the debt shall be made out to Petitioner and mailed to Petitioner's attorney's office.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 16th day of June 2026.



David G. Estudillo
United States District Judge

---

reduction, Respondents do not explain *why* the 47 hours is unreasonable, so the Court declines to reduce the fees awarded by more than 20 percent for the large time increments as previously identified.

ORDER ON PETITIONER'S MOTION FOR ATTORNEY FEES - 12